# United States District Court

__SOUTHERN__ DISTRICT OF __FLORIDA__

UNITED STATES OF AMERICA

V.

ROBERTO FARRADAC, ORLANDO MESA
BERNAL SOTO, and EDGAR GUZMAN

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 00-2529-Turnoff

FILED BY MAG. SEC.
MAR 31 2000
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __March 29- March 31, 2000__ in __Broward and Dade__ county, in the __Southern__ District of __Florida__ defendant(s) did, (Track Statutory Language of Offense)

knowingly and intentionally import into the United States, did knowingly and intentionally attempt to possess with intent to distribute, a mixture and substance containing a detectable amount of cocaine, and did conspire to import and conspire to possess with intent to distribute a mixture and substance containing a detectable amount of cocaine

in violation of Title __21__ United States Code, Section(s) __952(a), 841(a)(1), 963 and 846__

I further state that I am a(n) __Special Agent__ and that this complaint is based on the following
                                        Official Title
facts:

Please see attached affidavit.

Continued on the attached and made a part hereof:    [x] Yes  [ ] No

Signature of Complainant
Steven Hauk
Special Agent, Customs

Sworn to before me, and subscribed in my presence,

March 31, 2000                          at  Miami, FL
Date                                        City and State

WILLIAM C. TURNOFF
U.S MAGISTRATE JUDGE
Name and Title of Judicial Officer

## A F F I D A V I T

I, James S. Houk, United States Customs Service, Department of Treasury, being duly sworn, states:

1. That I am a Special Agent with the United States Customs Service and have been employed as a Customs Criminal Investigator for over (11) years. I am trained and experienced in the methods used by drug smugglers pertaining to the importation, warehousing and distribution of cocaine, marijuana and in the financial aspects of the illegal narcotics business. I have participated in the seizure of thousands of pounds of illegal narcotics and the arrest of approximately seventy (70) subjects. During the eleven years of appointment to this position, I received training and actual experience in detecting, handling and identifying controlled substances. Some of my duties as a Customs Criminal Investigator include the development and evaluation of information in order to detect the smuggling of contraband substances by aircraft, vessels and vehicles into the United States. I am presently assigned to the U.S. Customs Office of the Resident Agent in Charge, Fort. Lauderdale, Florida.

2. On or about March 22, 2000, the M/V Dole Chile, operated by King Ocean Shipping Line, arrived at Port Everglades, Florida, on voyage 007, from Port of Limon, Costa Rica. On the vessel was a 40' container, number CLHU406170. The bill of lading for the container, KNOPPMON52007026, listed the following information:

    A.    Addressed to:    Bernal Soto
                                       380 West 53rd Street
                                       Hialeah, Florida, 33012

         Notify:             The Same

    B.    Shippers Address:    Bernal Soto
                                       San Jose, Costa Rica
                                     Tel. 222-2313

    C.    Dimensions:       40' Dry Cargo Container

    D.    Bill of Lading #:    KNOPPMON52007026

    E.    Contents:         One 1989 Ford Bronco

    3.    This container was searched by U.S. Customs Inspectors, on March 29, 2000, and was found to contain one 1989 Ford Bronco, VIN 1FMCU12T3KUA54141, black and silver in color. Further examination of the vehicle was conducted when K-9 "Sir Knight," 1C63, alerted to the gas tank area. U.S. Customs Inspectors then drilled the gas tank and discovered a white powdery substance which field tested positive for cocaine. The cocaine weighed approximately 86 pounds or 39 kilograms. The 34 packages, wrapped in brown tape, were concealed inside a secret compartment in the center of the gas tank of the vehicle.

    4.  A Florida vehicle registration query on VIN 1FMCU12T3KUA54141, indicates that the 1989 Ford Bronco II Utility is registered to Bernal Guillermo Soto of 801 NW 18 Place, Miami, Florida, 33125. The registration lists Soto's date of birth as 06/14/51 with a Florida driver license of S300-067-51-214-0. His

2

license was issued October 5, 1994 and expires on June 14, 2001.

5.  Said vehicle was to be removed from the container, by the shipping line employees, and placed in the King Ocean yard at Port Everglades, once released by U.S. Customs Inspectors.  The owner will then be contacted, by the shipping line, that the vehicle is ready to be picked up.

6.  On March 30, 2000, at approximately 4:30 p.m., BERNAL SOTO and EDGAR GUZMAN arrived at King Ocean container yard.  GUZMAN remained in a Silver Isuzu Trooper that the two had arrived in as Soto went into the shipping yard to obtain release of the 1989 Ford Bronco which was being shipped from Costa Rica.  The 1989 Ford Bronco was then released to SOTO.  The Ford Bronco would not start so SOTO and GUZMAN left the shipping yard in the Isuzu to obtain gas for the Bronco.  They returned shortly thereafter with a gas can.  GUZMAN again dropped SOTO to try to fill the Bronco with gas. SOTO poured gas in the car, an some of the gas leaked out of the fuel tank of the Bronco.  The bronco still would not start and SOTO requested that the shipping yard contact a tow truck which they did.

7.  SOTO then made several phone calls from a pay phone in front of the shipping yard.  The tow truck arrived and left with the Bronco.  SOTO was seated in the passenger seat of the tow truck.  The tow truck was followed by the Isuzu with GUZMAN driving.

3

8. The tow truck traveled southbound on I-95 towards Hialeah. The tow truck arrived at a Shell Gas Station where they met ROBERTO FARRADAZ. All three appeared to pool their money to pay for the tow truck. At that time, GUZMAN and SOTO departed in the Isuzu Trooper. FARRADAZ got in the passenger side of the tow truck and directed it down the side street to a nearby residence.

9. The Ford Bronco was unloaded from the flatbed tow truck. FARRADAZ and ORLANDO MESA opened a gate and pushed the Bronco towards the back driveway of the residence. Moments later a beeper which had been placed by law enforcement officials near the gas tank to monitor the removal of the gas tank, was triggered and agents knew that FARRADAZ and MESA had been attempting to access the gas tank of the Ford Bronco, where the 39 kilograms of cocaine had previously been hidden.

10. When agents arrived at the scene, they observed FARRADAZ and MESA under the rear of the Ford Bronco near the gas tank. The plate which held the gas tank had been removed allowing FARRADAZ and MESA access to the gas tank where the cocaine had been hidden before it was removed by Customs agents.

11. FARRADAZ and MESA were arrested. Agents observed tools, siphoning tubes, a bucket, near the Ford Bronco. A rachet and socket tool was still attached to the gas tank strap underneath the Ford Bronco. After receiving consent to search the residence, agents observed a large piece of plywood in the room next to the

driveway. Plugged into the socket near the wood was a metal cutting tool, and a black piece of luggage. The plywood was approximately the same size as gas tank of the Bronco.

12. Registration checks of the Isuzu provided agents with an address of the owner of the Isuzu. Agents responded to that address where the Isuzu was located. GUZMAN answered the door. GUZMAN allowed the agents inside the residence where they then met with SOTO. The agents explained their reason for being at the residence. GUZMAN and SOTO agreed to explain why they had been at the shipping yard to pick up the Ford Bronco. SOTO and GUZMAN were separated and questioned individually.

13. SOTO told the agents that he knew that there was cocaine in the vehicle but did not know how much. He said he was paid $1,500 for allowing them to use the Bronco to hide the cocaine, that he had traveled to Costa Rica in February and returned on Wednesday on March 22, 2000. He indicated that he was told that drugs would be in the car and that GUZMAN also knew there were drugs in the car. SOTO also said he had met with FARRADAZ one week before and knew that FARRADAZ was going to receive the Bronco. GUZMAN knew to meet FARRADAZ at the Shell station where FARRADAZ obtained the Bronco. SOTO said he took the car to costa Rica one year ago and that someone else paid for the transportation of the vehicle to and from Costa Rica. SOTO also stated that GUZMAN's job was to drive SOTO to the port to pick up the vehicle. GUZMAN

5

and SOTO discussed the cocaine being in the vehicle. GUZMAN introduced SOTO to FARRADAZ one week ago, and that FARRADAZ was responsible for the Bronco once it was dropped off. GUZMAN and SOTO flew back from Costa Rica together and on the plane they discussed the drug in the vehicle. SOTO was provided with a ticket to return to the Untied States. FARRADAZ picked GUZMAN and SOTO up at the airport when they returned from Costa Rica.

                       FURTHER AFFIANT SAYETII NAUGIIT

                       _____
                       Special Agent Steven Houk
                       United States Customs Service

Subscribed and sworn to before me
this _____, day of March, 2000.

_____
WILLIAM C. TURNOFF
CHIEF UNITED STATES MAGISTRATE JUDGE