UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6090-CR-ZLOCH

UNITED STATES OF AMERICA,

VS.

EDGAR GUZMAN,

        Defendant.
_____/



## DETENTION ORDER

THIS MATTER came before the Court upon the Government's motion to detain the defendant, **Edgar Guzman**, prior to trial and until the conclusion thereof. Having received evidence and heard argument of counsel, the Court hereby GRANTS the motion and enters its written findings of fact and statement of reasons for the detention in accordance with the provisions of 18 U.S.C. § 3142(i).

A.    INTRODUCTION

On April 17, 2000, the Court held a hearing to determine whether any condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of any person and the community. 18 U.S.C. § 3142(f). Based upon the Indictment of the Grand Jury, see United States v. Hurtado, 779 F.2d 1467, 1479 (11th Cir. 1985), the Court finds probable cause that the defendant, **Edgar Guzman**, committed an offense for which a maximum term of imprisonment of ten (10) years or more



is prescribed in the Controlled Substances Act, 21 U.S.C. § 801 et seq. This finding gives rise to a rebuttable presumption that no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e). Assuming, arguendo, that the defendant has come forward with sufficient evidence to rebut the statutory presumption, the presumption "remains in the case as an evidentiary finding militating against release, to be weigh[ed] along with other evidence." United States v. Quartermaine, 913 F.2d 910, 916 (11th Cir. 1990); United States v. King, 849 F.2d 485, 488 (11th Cir. 1988). Throughout this proceeding, the burden of persuasion is upon the Government to establish by the "preponderance of the evidence" that the defendant poses a risk of flight and/or by "clear and convincing evidence" that he poses a danger to the community. Id. at 489; 18 U.S.C. § 3142(f). In determining whether the Government has met its burden by the requisite standard of proof, this Court must take into account the factors enumerated in 18 U.S.C. § 3142(g).

B.   FINDINGS OF FACT

1.   The defendant is charged with conspiracy to import cocaine, importation of cocaine, conspiracy to possess with intent to distribute cocaine, and attempt to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846, 952(a), and 963. Therefore, the defendant is charged with crimes involving a narcotic drug. 18 U.S.C. § 3142(g)(1).

2.   The Court received credible evidence that the defendant committed the offenses with which he has been charged. On or about March 22, 2000, a vessel arrived

at Port Everglades, Florida, from Port of Limon, Costa Rica, carrying a 1989 Ford Bronco. The accompanying documentation reflected that the shipper and the addressee of the Bronco was Bernal Soto; subsequent investigation revealed that the vehicle also was registered to him.

On March 29, 2000, United States Customs personnel, assisted by a narcotics canine, examined the vehicle. The narcotics canine alerted to the gas tank area. When Customs personnel drilled the gas tank, they discovered a white powdery substance that field tested positive for cocaine. The cocaine was subsequently removed from a secret compartment in the center of the vehicle's gas tank and found to weigh approximately 86 pounds or 39 kilograms. Customs personnel then resealed the tank and installed an electronic beeper that would alert them if the gas tank were being accessed. The vehicle was placed in the lot of the shipyard, and the owner of the vehicle (Soto) was contacted.

On March 30, 2000, at approximately 4:30 p.m., Bernal Soto and **Edgar Guzman** arrived at the shipyard in an Isuzu. **Guzman** remained in the Isuzu, while Soto went into the shipyard office to obtain the release of his Ford Bronco. He obtained the release of his vehicle but then discovered that it would not start. Soto and **Guzman** departed the shipyard and returned with a gasoline can. Soto poured the fuel into the vehicle; some of it leaked out of the tank. The Bronco, however, still would not start. Soto requested that the shipyard contact a tow truck.

Agents observed Soto place several telephone calls from a pay telephone in front of the shipyard. A tow truck arrived to pick up the Bronco. Soto left in the tow truck with the Bronco, while **Guzman** followed in the Isuzu. The tow truck proceeded to a gasoline

station near Hialeah. Soto and **Guzman** then exited their vehicles and met with Roberto Farradaz; the three appeared to pool their money to pay for the tow truck. **Guzman** and Soto then departed in the Isuzu. Farradaz got into the tow truck and directed it down the street to a nearby residence, where the Ford Bronco was unloaded. Assisted by Orlando Mesa, Farradaz then opened a gate and pushed the Bronco toward the back driveway of the residence.

A few moments later, the beeper that Customs personnel had inserted near the gas tank was activated, alerting agents that someone had been attempting to access the gas tank area. As agents approached the Bronco, they observed Farradaz and Mesa under the rear of the vehicle near the gas tank. Agents found that the plate that had held the gas tank had been removed, allowing Farradaz and Mesa to access the tank where the cocaine had previously been secreted. The agents placed Farradaz and Mesa under arrest. They also noted the presence of tools, siphoning tubs, a bucket, and (during a search of the residence) metal cutting shears.

Agents then proceeded to the address of the Isuzu's registered owner. **Guzman** answered the door and allowed agents inside where they encountered Soto. **Guzman** and Soto agreed to explain why they had been at the shipyard to retrieve the Bronco.

Soto acknowledged being aware that cocaine had been placed in the Bronco, but he claimed not to know the quantity. He stated that he had been paid $1,500 for allowing the use of his Bronco to hide the cocaine. He had been told that **Guzman** also knew that cocaine was in the vehicle. Soto told agents that **Guzman** had introduced him to Farradaz one week before, and Soto knew that Farradaz would ultimately be receiving the Bronco.

4

According to Soto, **Guzman** knew to meet Farradaz at the Hialeah gas station where Farradaz took possession of the Bronco. Soto stated that he had taken the vehicle to Costa Rica one year ago and that somebody else had paid for its transportation to and from Costa Rica. Soto stated that **Guzman**'s job was to drive him to Port Everglades to pick up the vehicle. Soto informed agents that he and **Guzman** had flown back from Costa Rica together and that during the flight they had discussed the narcotics in the Bronco. Farradaz picked both of them up at the airport upon their return from Costa Rica. 18 U.S.C. § 3142 (g)(2).

3.      The pertinent history and characteristics of the defendant are significant to this Court's assessment of his candidacy for bond. The defendant is a citizen of Costa Rica. He initially entered the United States illegally in 1986 but was granted permanent resident alien status in 1989. Since 1986, the defendant has travelled to and from Costa Rica on approximately thirty (30) occasions. He last re-entered the United States on March 27, 2000.

According to the Pretrial Services Report, for the past one and a half to three years, the defendant has been residing between the United States and Costa Rica. While in Costa Rica, he lives with his mother and step-father; while in the United States, he lives with his former in-laws in Miami. The Report further reflects that the defendant's half-brother resides in Costa Rica, as does a six year-old daughter and an ex-wife. Another daughter and ex-wife reside in Miami, although the defendant maintains no contact with them.

The defendant reports that he has been self-employed in the import-export

automobile sales business for the past nine years, earning approximately $1,200 per month. Accordingly, he possesses no assets of significant value. 18 U.S.C. § 3142(g)(3)(A) and (B).

4.   The Court received evidence concerning the nature and seriousness of the danger to the community that would be posed by the release of this defendant. The defendant does not have a prior criminal record. Nonetheless, he appears here to have been intimately involved in the importation of approximately 39 kilograms of cocaine. 18 U.S.C. § 3142(g)(4).

5.   The Court specifically finds by the preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance at trial. 18 U.S.C. § 3142(e).

6.   The Court is not able to find by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community. 18 U.S.C. § 3142(e).

C.   STATEMENT OF REASONS FOR DETENTION

1.   Based upon the above findings of fact, this Court concludes that the release of this defendant on bond prior to trial would present an unreasonable risk of flight. Although the defendant is now a permanent resident alien of the United States, he retains his Costa Rican citizenship and has travelled there on approximately 30 occasions, staying with his mother and step-father. He has a daughter and ex-wife residing in Costa Rica as well. Although he also has another ex-wife and daughter residing in Miami, he maintains no contact with them, and he has only marginal financial ties to the United States.

Accordingly, the undersigned does not believe that he would be likely to appear if released on bond prior to trial.

   2.   Based upon the above findings of fact, this Court cannot conclude that the release of this defendant on bond prior to trial would present an unreasonable danger to persons and to the community. The defendant does not have a prior criminal record, and his role in the instant conspiracy does not appear to be one of leadership.

D.   DISPOSITION

Being fully advised, the Court hereby ORDERS that the defendant, **Edgar Guzman**, be detained prior to trial and until the conclusion thereof.

The Court further DIRECTS

   1.   That the defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

   2.   That the defendant be afforded reasonable opportunity for private consultation with counsel; and

   3.   That, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States marshal for the purpose of an

appearance in connection with a court proceeding.

DONE AND ORDERED at Fort Lauderdale, Florida this 18th day of April 2000.

BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE

Copies to:

Honorable William J. Zloch
United States District Judge

Robert Berube, Esquire
Assistant Federal Public Defender
Attorney for Defendant

Lawrence Bardfeld, Esquire
Assistant United States Attorney

United States Marshal

United States Pretrial Services